UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

JERRY ANDERSON II et al.,

        Plaintiffs,                    Case No. 2:21-cv-123

v.                                           Honorable Jane M. Beckering

ERICA HUSS et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiffs' complaint for failure to state a claim against Defendants Washington, Whitmer, Russell, and the Michigan Department of Corrections (MDOC). The Court will also dismiss Plaintiff Anderson's First Amendment retaliation claims against Defendant Huss. Plaintiffs' Eighth Amendment claims against Defendant Huss remain.

## Discussion

### I. Factual Allegations

Plaintiff Jerry Anderson is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. Plaintiff LaDontae McKinley is presently incarcerated at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events of which Plaintiffs complain took place at MBP. Plaintiffs sue MBP Warden Erica Huss, MDOC Director Heidi Washington, Michigan Governor Gretchen Whitmer, MDOC Grievance Manager Richard Russell, and the MDOC.

Plaintiff Anderson alleges that Defendant Huss was deliberately indifferent to his health and safety when she refused to separate him from COVID-19-positive prisoners during September and October of 2020. Anderson filed a grievance against Defendant Huss. MBP Assistant Deputy Warden Clouse rejected the grievance. Defendant Huss upheld the rejection on November 6, 2020, and Defendant Russell upheld the decisions of Huss and Clouse on March 8, 2021.

Plaintiff Anderson grieved Defendant Huss again during December of 2020, claiming that she should not have participated in rejecting a grievance filed against her. MBP Grievance Coordinator Glenn Caron rejected the grievance. Defendant Huss upheld the grievance rejection. Just a few days later, Anderson contends that Huss retaliated against him for filing the grievance by placing more COVID-19 positive prisoners into his cell block.

Plaintiff Anderson further claims that Defendant Huss disregarded the mandates of Defendant Washington to maintain social distancing among prisoners and to maintain separation between four categories of prisoners: positive prisoners, close contacts of positive prisoners, prisoners under investigation for COVID-19 infection, and negative prisoners. Anderson reports

that Huss told him that "there's no need to separate you all because you're bound to catch COVID-19 anyways. It's just a matter of time." (Compl., ECF No. 1, PageID.6.)

Plaintiff Anderson claims that Defendant Washington failed to enforce the mandates regarding social distancing and separation and failed to supervise Defendant Huss. Anderson claims that the MDOC failed to protect him because its prisons do not allow for social distancing and they are too crowded. Anderson claims that Defendant Whitmer is responsible for the actions of Defendants Russell, Huss, Washington, and the MDOC.

Plaintiff LaDontae McKinley reports that his "story is almost identical and runs in stride with Anderson's." (Compl., ECF No. 1, PageID.10.) McKinley adds that the cell block windows were routinely left open so that the wind would circulate the airborne virus. McKinley also notes that, as a food porter, he was forced to come "face to face with the contagious prisoners 6 (six) times a day . . . ." (*Id.*)

Plaintiffs seek release to home confinement. They also ask the Court to enter an injunction compelling Defendants to separate the four different prisoner classes—positive, negative, close contacts, and prisoners under investigation. Finally, Plaintiffs ask for hundreds of thousands of dollars in compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

3

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiffs allege that Defendants were deliberately indifferent to their health and safety which implicates Plaintiffs' Eighth Amendment rights. Plaintiff Anderson also alleges that

4

Defendant Huss retaliated against him for filing his second grievance. Such a claim implicates Plaintiff Anderson's rights under the First Amendment.[1]

### A. Claims against the MDOC

Plaintiffs may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

Therefore, for both reasons, the Court dismisses Plaintiffs' complaint against the MDOC.

---

[1] To the extent that Plaintiff McKinley intends to maintain a retaliation claim against Defendant Huss, he lacks standing to assert a claim based on the purported violation of Plaintiff Anderson's First Amendment rights. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–62 (1992); *Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002).

5

B.     **First Amendment retaliation claim against Defendant Huss**

Plaintiff Anderson's retaliation claim against Defendant Huss similarly fails.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Anderson alleges that he engaged in protected conduct when he filed administrative grievances. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Anderson alleges that Defendant Huss transferred COVID-19 positive prisoners to his cell block in retaliation for his filing of administrative grievances. The Court concludes that such an action could deter a person from engaging in protected conduct.

6

The third element requires a motivational link between the first and second elements. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Anderson merely alleges the ultimate fact of retaliation in this action. (Compl., ECF No. 1, PageID.7) ("Huss received the Step II grievance on 1-5-21 . . . on or about 1-14-21 . . . Huss retaliated against Anderson for his grievances by placing more COVID-19 prisoners into C-Block again."). Anderson has not presented any facts to support his conclusion that Defendant Huss, or any other defendant, retaliated against him because he filed grievances. The purportedly retaliatory transfer of prisoners into the cell block occurred weeks after he filed the grievance(s). Moreover, Plaintiffs complain that Huss failed to maintain separation between the four identified groups of prisoners throughout the period covered by their complaint, apparently before and after Anderson filed his grievances. Accordingly, his speculative and conclusory allegation of a retaliatory motive falls short. Anderson has failed to state a claim for First Amendment retaliation.

### C. Eighth Amendment claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiffs contend that Defendants were deliberately indifferent to the risk posed by the COVID-19 pandemic. In order for a prisoner to prevail on an Eighth Amendment deliberate indifference claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and

8

disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Objective prong

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

Under that precedent, a medically vulnerable plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus. Plaintiffs allege conditions that could facilitate COVID-19 transmission within MBP. Plaintiffs do not allege that they suffer any particular medical vulnerability. Nonetheless, at this early stage, the Court concludes that Plaintiffs allege facts sufficient to satisfy the objective prong of the deliberate indifference test.

9

### 2. Subjective prong

The Sixth Circuit went on in *Wilson* to address the subjective prong of an Eighth Amendment claim, noting that the pertinent question was whether the BOP's actions demonstrated deliberate indifference to the serious risk of harm posed by COVID-19 in the prison:

> There is no question that the BOP was aware of and understood the potential risk of serious harm to inmates at Elkton through exposure to the COVID-19 virus. As of April 22, fifty-nine inmates and forty-six staff members tested positive for COVID-19, and six inmates had died. "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). The BOP acknowledged the risk from COVID-19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elkton.
>
> The key inquiry is whether the BOP "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844. The BOP contends that it has acted "assiduously to protect inmates from the risks of COVID-19, to the extent possible." CA6 R. 35, Appellant Br., PageID 42. These actions include
>
>> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.
>
> *Id.* at 42–43.
>
> The BOP argues that these actions show it has responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment. We agree.
>
> Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant

10

supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41.

In its decision, the Sixth Circuit recognized that other Sixth Circuit decisions have found similar responses by prison officials and medical personnel, such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread, to be reasonable. *Id.* at 841 (citing *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448–49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510, 519–20 (6th Cir. 2008); *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018)). The *Wilson* Court also noted that other circuits had concluded that similar actions by prison officials demonstrated a reasonable response to the risk posed by COVID-19:

> In *Swain* [*v. Junior*], the Eleventh Circuit granted a stay of a preliminary injunction pending appeal on state inmates' Eighth Amendment claims. 958 F.3d [1081,] 1085 [(11th Cir. 2020) (per curiam)]. The Eleventh Circuit held that "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence,'" and "the evidence supports that [Metro West Detention Center ("MWDC") is] taking the risk of COVID-19 seriously." *Id.* at 1088–90 (citation omitted). In response to the pandemic in early March, MWDC began "cancelling inmate visitation; screening arrestees, inmates, and staff; and advising staff of use of protective equipment and sanitation practices" and, after reviewing further CDC guidance, began "daily temperature screenings of all persons entering Metro West, establish[ed] a 'COVID-19 Incident Command Center and Response Line' to track testing and identify close contacts with the virus, develop[ed] a social hygiene campaign, and mandate[d] that staff and inmates wear protective masks at all times." *Id.* at 1085–86. The Eleventh Circuit held that, because MWDC "adopted extensive safety measures such as increasing screening, providing protective equipment, adopting [physical] distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures," MWDC's actions likely did not amount to deliberate indifference. *Id.* at 1090.
>
> Similarly, the Fifth Circuit granted stays of two preliminary injunctions in *Valentine* [*v. Collier,* 956 F.3d 797 (5th Cir. 2020) (per curiam),] and *Marlowe* [*v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)]. In *Valentine*, inmates at Texas's Wallace Pack Unit filed a class action suit against

>the Texas Department of Criminal Justice ("TDCJ") alleging violations of the Eighth Amendment. 956 F.3d at 799. In response to the COVID-19 pandemic, TDCJ had taken preventative measures such as providing "access to soap, tissues, gloves, [and] masks," implementing "regular cleaning," "quarantin[ing] of new prisoners," and ensuring "[physical] distancing during transport." *Id.* at 802. The Fifth Circuit determined that the district court applied the wrong legal standard by "collaps[ing] the objective and subjective components of the Eighth Amendment inquiry" by "treating inadequate measures as dispositive of the Defendants' mental state" under the subjective prong and held that "accounting for the protective measures TDCJ has taken" the plaintiffs had not shown deliberate indifference. *Id.* at 802–03. In *Marlow*e, the Fifth Circuit relied on its reasoning in *Valentine* and again reiterated that there was "little basis for concluding that [the correctional center's] mitigation efforts," which included "providing prisoners with disinfectant spray and two cloth masks[,] . . . limiting the number of prisoners in the infirmary lobby[,] and painting markers on walkways to promote [physical] distancing," were insufficient. 2020 WL 2043425, at *2–3.

*Wilson*, 961 F.3d at 841–42.

After reviewing the cases, the *Wilson* Court held that even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19. The Court held that because the BOP had neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843–44.

In addition, in *Cameron v. Bouchard,* 818 F. App'x 393 (6th Cir. 2020), the Court relied on *Wilson* to find that pretrial detainees in the Oakland County Jail were unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims. The plaintiffs in *Cameron* claimed that jail officials were deliberately indifferent to the substantial risk of harm posed by COVID-19 at the jail. The district court initially granted a preliminary injunction requiring the defendants to "(1) provide all [j]ail inmates with access to certain protective measures and medical care intended to limit exposure, limit transmission, and/or treat COVID-19, and (2) provide the district court and Plaintiffs' counsel with a list of medically vulnerable inmates within three business days." *Id.* at

12

394. However, following the decision in *Wilson*, the Court granted the defendants' renewed emergency motion to stay the preliminary injunction, finding that the preventative measures taken by the defendants were similar to those taken by officials in *Wilson* and, thus, were a reasonable response to the threat posed by COVID-19 to the plaintiffs. *Id.* at 395. Subsequently, in an unpublished opinion issued on July 9, 2020, the Sixth Circuit vacated the injunction. *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020).

During March of 2020, Defendant Whitmer issued Executive Order 2020-4, announcing that the Michigan Department of Health and Human Services had identified the first two presumptive-positive cases of COVID-19 in Michigan. The MDOC did not stand idly by. Defendant Washington issued a series of Director's Office Memorandums (DOMs) addressing the risks posed by the pandemic and the MDOC's efforts to mitigate that risk.

The Court notes that the MDOC issued its first COVID-19 DOM on April 8, 2020, and issued multiple revised DOMs on the subject to limit the threat posed by COVID-19.[2] *See* MDOC DOM 2020-30 (eff. Apr. 8, 2020) (mandating multiple protective measures including the wearing of masks by prisoners and staff, screening of all individuals before entering prison facilities, keeping of social distance, restricting visits and phone calls, and limiting transfers and cell moves);

---

[2] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer); DOM 2020-30R3 (eff. May 27, 2020); DOM 2020-30R4 (eff. Aug. 10, 2020); DOM 2020-30R5 (eff. Aug. 25, 2020); DOM 2020-30R6 (eff. Aug. 27, 2020); DOM 2020-30R7 (eff. Nov. 5, 2020); DOM 2020-30R8 (eff. Nov. 24, 2020); DOM 2021-26 (eff. Jan. 1, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R2 (eff. Jan. 21, 2021); DOM 2021-26R3 (eff. Jan. 25, 2021); DOM 2021-26R4 (eff. Mar. 5, 2021); DOM 2021-26R5 (eff. Mar. 19, 2021); DOM 2021-26R6 (eff. Mar. 26, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R8 (eff. Aug. 6, 2021); DOM 2021-26R9 (eff. Aug. 23, 2021); DOM 2021-26R10 (eff. Oct. 11, 2021); DOM 2021-26R11 (eff. Nov. 19, 2021); DOM 2021-26R12 (eff. Dec. 3, 2021); DOM 2022-21R (eff. Jan. 11, 2022); DOM 2022-21R2 (eff. Jan. 14, 2022); DOM 2022-21R3 (eff. Jan. 18, 2022); DOM 2022-21R4 (eff. Jan. 24, 2022); DOM 2022-21R5 (eff. Feb. 9, 2022); DOM 2022-21R6 (eff. Feb. 15, 2022); DOM 2022-21R7 (eff. Feb. 28, 2022). The DOMs in effect during the time period recounted in Plaintiffs' complaint include DOM 2020-30R6, DOM 2020-30R7, and DOM 2020-30R8. Each of those DOMs called for the wearing of personal protective equipment, screening of individuals before entering a facility, social distancing, the creation of isolation and quarantine areas—as resources permit—for prisoners who tested positive and prisoners under investigation for having COVID-19, isolation of the personal property of positive prisoners and prisoners under investigation, limitations of visitation and programs, the use of alcohol-based sanitizers and wipes by staff, limited transfers and cell moves, testing, adequate soap for hygiene and cleanliness, the use of bleach under staff supervision, no prisoner co-pays for COVID-19 testing and management, and remote work by staff when possible.

### a. Defendants Whitmer and Washington

The responses of Whitmer and Washington to the pandemic do not support a claim that they were deliberately indifferent to the risk of harm to prisoners posed by COVID-19. As was true of the BOP in *Wilson*, even if Washington's and Whitmer's responses to COVID-19 proved to be inadequate, they took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19. The Court concludes, as the Sixth Circuit concluded in *Wilson*, that neither Washington nor Whitmer disregarded a known risk nor did they fail to take steps to address the risk. Accordingly, they did not act with deliberate indifference in violation of the Eighth Amendment.

Plaintiffs may not even contend that Defendants Washington and Whitmer were deliberately indifferent. It may be that it was Plaintiffs' intent to hold Washington and Whitmer responsible for the actions of Huss, because they are Huss's superiors. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,*

15

> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiffs fail to allege any facts showing that Defendants Washington or Whitmer encouraged or condoned the conduct of Huss, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiffs fail to allege any facts at all about Washington's or Whitmer's knowledge or conduct relating to Huss's alleged disregard of the MDOC protocols. Plaintiffs' vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Washington or Whitmer were personally involved in the events surrounding the alleged mixing of the four classes of prisoners in C-Block. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiffs' § 1983 action claims against Washington and Whitmer are premised on nothing more than respondeat superior liability, they fail to state a claim against those Defendants.

### b. Defendant Russell

Plaintiffs' claim against Defendant Russell fares no better. With regard to Russell, Plaintiffs do not contend that Russell is liable for Huss's actions because he is her supervisor, but because he failed to correct the problems when presented with Plaintiffs' grievances. Section 1983 liability may not be imposed simply because an official denied an administrative grievance or

failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Accordingly, Plaintiffs have failed to state a claim against Defendant Russell as well.

### c. **Defendant Huss**

Plaintiffs' allegations regarding Defendant Huss, however, reflect Huss's active and personal involvement. Plaintiffs allege that Huss purposely disregarded the DOM requirements for social distancing and separation and even voiced her indifference to the resulting risk of harm to Plaintiffs. Plaintiffs' complaint, therefore, suffices to state an Eighth Amendment deliberate indifference claim against Defendant Huss.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Whitmer, Russell, and the MDOC will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff Anderson's First Amendment retaliation claim against Defendant Huss. Plaintiffs' Eighth Amendment claims against Defendant Huss remain in the case.

An order consistent with this opinion will be entered.

Dated:   March 22, 2022                                /s/ Jane M. Beckering
                                                                                     Jane M. Beckering
                                                                                     United States District Judge